IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 14-cv-00141-RBJ

CLAUDIA S. PETERS,

    Plaintiff,

v.

CAROLYN COLVIN, Acting Commissioner of Social Security,

    Defendant.

---

ORDER

---

This matter is before the Court on review of the Commissioner's decision denying claimant Claudia Peters' application for Social Security disability benefits for the period from July 1, 2007 to July 6, 2010. Jurisdiction is proper under 42 U.S.C. § 405(g). For the reasons explained below, the Court reverses and remands the Commissioner's decision.

**I. Standard of Review**

This appeal is based upon the administrative record and briefs submitted by the parties. In reviewing a final decision by the Commissioner, the role of the District Court is to examine the record and determine whether it "contains substantial evidence to support the [Commissioner's] decision and whether the [Commissioner] applied the correct legal standards." *Rickets v. Apfel*, 16 F.Supp.2d 1280, 1287 (D. Colo. 1998). A decision cannot be based on substantial evidence if it is "overwhelmed by other evidence in the record." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988). Substantial evidence requires "more than a scintilla, but less

than a preponderance." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

## II. Background

Ms. Peters, who was born in March 1951, lives in Dove Creek, Colorado. She has previously worked as a caregiver, chore person for the elderly, driver, and housekeeper. Many of Ms. Peters' alleged impairments stem from a shoulder injury she suffered after slipping and falling while cleaning a client's house in 2005. *See* R. at 263. She underwent rotator cuff repair surgery in September 2006 but has continued to experience pain related to this injury. R. at 263–64. On July 6, 2010, Ms. Peters began attending physical therapy for vertigo. R. at 565. She later began physical therapy for her shoulder in February 2012. R. at 519.

### A. Procedural History

On December 18, 2009, Ms. Peters filed a Title II application for benefits based on disability beginning on September 1, 2006. The claim was initially denied on July 23, 2010. The claimant then filed a request for a hearing, which was held on April 24, 2012 in front of Administrative Law Judge William Musseman. The ALJ issued a Partially Favorable Decision on May 1, 2012, finding that Ms. Peters was not disabled prior to July 6, 2010, but that she became disabled on that date and has continued to be disabled. The Commission denied her request for review on November 21, 2013. Ms. Peters filed a timely appeal in this Court contesting the finding that she was not disabled prior to July 6, 2010.

### B. The ALJ's Decision

The ALJ issued a partially favorable opinion after evaluating all of the evidence

according to the Social Security Administration's standard five-step process. At step one, he found that Ms. Peters had amended her alleged onset date to July 1, 2007, and that she had not engaged in substantial gainful activity since that date. R. at 23, 25. Next, at step two, the ALJ found that the claimant had had the following severe impairments since July 1, 2007: degenerative changes of the right shoulder, status post acromioplasty and rotator cuff repair, and obesity. R. at 25. At step three, the ALJ concluded that Ms. Peters had not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 since July 1, 2007. R. at 25. He then found that, prior to July 6, 2010, the claimant had had the residual functional capacity ("RFC") to perform light work, "except the claimant can only occasionally reach overhead." R. at 26. However, beginning on July 6, 2010, the claimant had the RFC to perform sedentary work, with a number of limitations. R. at 31. Turning to step four, the ALJ found that, prior to July 6, 2010, Ms. Peters had been capable of performing past relevant work as a companion, but beginning on that date, she could not perform any past relevant work. R. at 31. Finally, at step five, the ALJ found that there were no jobs in the national economy that the claimant was capable of performing beginning on July 6, 2010. R. at 32. He thus concluded that the claimant had not been under a disability prior to July 6, 2010, but that she had been disabled beginning on that date. R. at 32.

### III. Discussion

The claimant contends that the ALJ made the following errors in his opinion denying benefits prior to July 6, 2010: (1) he failed to consider all of the claimant's impairments in his RFC determination, and this determination was not supported by substantial evidence, (2) he did

not properly consider the opinion of the claimant's physical therapist, Mr. McAward, or that of Dr. Primack, and (3) his assessment of the claimant's credibility is flawed. The Court will address each point in turn.

### A. The RFC Determination

Ms. Peters contends that the ALJ did not consider all of her impairments in his assessment of her RFC, and that some of the ALJ's findings in the RFC analysis are not supported by substantial evidence. The ALJ found that, prior to July 6, 2010, the claimant had had the RFC to perform light work, "except the claimant can only occasionally reach overhead." R. at 26. The law is clear that, in making an RFC assessment, an ALJ must consider all of a claimant's medical impairments, including non-severe ones. *See* 20 C.F.R. § 404.1545(e). Here, the claimant argues that the ALJ failed to properly consider her obesity, right shoulder impairment, neck impairment, and anxiety. ECF No. 15 at 22–26.

#### 1. Obesity

Beginning with Ms. Peters' obesity, the claimant argues that the ALJ's opinion fails to describe how her obesity was taken into account in the RFC determination. SSR 96-8p requires that "[t]he RFC assessment . . . include a narrative discussion describing how the evidence supports each conclusion." "It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions." *Tracy v. Astrue*, 518 F. Supp. 2d 1291, 1297–98 (D. Kan. 2007) (citing *Cruse v. U.S. Dept. of Health & Human Services*, 49 F.3d 614, 618 (10th Cir.1995)). If the ALJ has not clearly linked the evidence in the record to the RFC determination, "the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination. Such bare conclusions are beyond meaningful judicial review." *Id.*

In the present case, the ALJ's RFC analysis notes that he has considered

> the effects of the claimant's obesity and its possible limitation of function in accordance with the requirements of SSR 02-1p. . . . As set forth in more detail below, the undersigned finds that while the claimant's weight is in itself not disabling, in combination with the claimant's other impairments, it significantly limits her ability to do basic work activities.

R. at 27–28. Despite alluding to a more detailed discussion later in the analysis, the ALJ did not at any point describe how the claimant's obesity, in combination with other impairments, limits her ability to work. *See* R. at 28–31. Indeed, there is no other mention of her obesity in the pre-July 2010 RFC analysis beyond the single observation that "[i]t is unclear how the claimant's obesity . . . would limit the claimant's ability to engage in postural activities." R. at 30. Thus the ALJ's discussion does not explain how he accounted for Ms. Peters' obesity in finding that she had had the RFC to perform light work with a limited ability to reach overhead prior to July 6, 2010. Because the ALJ failed to relate the evidence of Ms. Peters' obesity to his conclusions about her RFC, this portion of his opinion is beyond meaningful judicial review, and the decision must be remanded on this basis.[1]

### 2. Ms. Peters' Right Shoulder Impairment

Next, the claimant argues that the ALJ erred in assessing her right shoulder impairment. Specifically, she contends that (1) the ALJ failed to mention or discuss portions of Dr. Primack's opinion, and (2) the finding that Ms. Peters' treatment history was not consistent with her

---

[1] The government's general response to the claimant's arguments concerning the ALJ's RFC analysis is that (1) the ALJ did in fact discuss all of the impairments named in the claimant's brief and (2) the ALJ stated that he considered the entire record in assessing the claimant's RFC. ECF No. 16 at 19–20. While it is true that the ALJ did discuss the claimant's obesity, he did not do so to the extent required by the applicable law. As for the second point, although it is correct that courts generally take a lower tribunal at its word when it says it has considered a matter, here the applicable law makes clear that the ALJ must clearly link the evidence he discusses to his conclusions about the claimant's RFC. In this instance, the law requires more than a statement that a matter has been considered.

allegations of disabling shoulder pain was not supported by substantial evidence.

Beginning with the first point, while the ALJ need not discuss all the evidence in the record, he is required to "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton*, 79 F.3d at 1010.  In his discussion of the claimant's shoulder impairment, the ALJ noted that Ms. Peters had undergone rotator cuff repair surgery in September 2006, and that tests performed by Dr. Primack in September 2007 revealed some fraying but no evidence of a major tear or impingement syndrome.  R. at 28.  The ALJ thus concluded that the test results were "not consistent with the claimant's allegations of hand numbness."  R. at 28.  However, he found that the evidence overall "would support some limitation in the ability to use the upper right extremity, but [the findings] are far less extreme . . . than one would expect given the claimant's allegations, and [they] do not support her allegations of hand numbness and tingling."  R. at 28.

The claimant takes issue with the fact that the ALJ did not mention Dr. Primack's comment that "clinically, the patient does have tightness at the level of the posterior capsule" or his statement that "[h]er discomfort is more mechanical.  This is seen with tightness at the level of the posterior capsule. . . . I do not feel as though further treatment would alter her clinical course."  R. at 258, 261.  However, the claimant fails to explain how either of these statements undermines the ALJ's analysis, which includes a finding of some limitation in the claimant's ability to use her upper right extremity.  *See* R. at 28.  Moreover, Dr. Primack ultimately concluded that based on the claimant's loss of motion, "in [his] opinion, to within a reasonable degree of medical probability, there is a 12% impairment of the right upper extremity."  R. at 261.  The ALJ's conclusion is entirely consistent with this statement.  For these reasons, the

6

Court sees no reason to view the statements the claimant cites as uncontroverted evidence the ALJ chose not to rely upon or significantly probative evidence he rejected. Thus the Court finds no basis for error in the ALJ's discussion of Dr. Primack's report.

The Court now turns to the claimant's argument that the ALJ's finding that Ms. Peters' treatment history was not consistent with her allegations of disabling shoulder pain, R. at 28, was not supported by substantial evidence. In reaching this conclusion, the ALJ relied on the fact that although she sees her physician, Dr. Bloink, regularly, she has only complained of shoulder pain to him "on a few occasions." R. at 28 (citing R. at 397–463). Additionally, to manage her shoulder pain, the claimant "basically relied on ibuprofen from September 2008 to September 2009" and then began taking Flexeril. R. at 28 (citing R. at 403, 406, 416, 417). Lastly, the ALJ noted that from 2007 to 2010 Ms. Peters "did not seek more aggressive treatment of her shoulder pain, such as seeking out injections, physical therapy, or message therapy. Nor does she appear to use any home treatment modalities to treat her shoulder pain." R. at 28. He thus concluded that "the claimant's low level of treatment and lack of consistent complaints from 2007–2010 are not consistent with her allegations of disabling pain." R. at 28–29.

The claimant's brief lists several instances in which Ms. Peters discussed her shoulder pain with medical professionals between 2007 and 2010:

- Dr. Primack (8/17/2007), R. at 263–66: The report summarizes the history of the claimant's shoulder injury and notes her complaints of pain and numbness. The claimant reported that she "feels worse" when combing her hair, writing, driving, cutting vegetables, and vacuuming.
- Dr. Primack (9/17/2007), R. at 261: The doctor noted that Ms. Peters "does not have a neurogenic cause to her pain. Her discomfort is more mechanical."
- FNP Archer (2/7/2008), R. at 422: Ms. Peters "presented for a refill of meds for shoulder pain. This pain has bothered her for the past two years." The report goes on to describe the claimant's pain and notes that she "[w]as taking ketoprofen cream

7

- because she cannot tolerate the GI effects of ibuprofen any longer. . . . Also, she does not sleep well since this pain started 2 years ago."

- FNP Archer (2/21/2008), R. at 421: Reports that the claimant still has "constant, aching type pain."

- Dr. Bloink (8/19/2008), R. at 419: The doctor reported that, following surgery and physical therapy, the claimant "continues to have chronic pain in the shoulder." Ms. Peters reported that since beginning new medications in February 2008, some of her symptoms had improved up to 40%, but she was also experiencing side effects from the medications. The doctor noted that the claimant "is limited to certain pain medicines, because of a history of GERD and hypertension."

- Dr. Bloink (9/17/2008), R. at 417: This visit was a follow-up appointment from the one on August 19, 2008. The doctor noted that the tramadol, which he had prescribed at the last visit, had "wiped [the claimant] out," so she had begun taking it only before bed and using ibuprofen during the day.

- Dr. Bloink (12/17/2008), R. at 416: The report notes that the claimant's "chronic shoulder pain is controlled most of the time with ibuprofen 800 mg one to 3 times per day. She occasionally takes tramadol 50 mg and/or Flexeril at bedtime. She also takes Prozac 20 mg daily and Nexium 20 mg daily." The doctor also reported that her chronic pain control was "adequate."

- Dover Creek Volunteer Ambulance EMS (12/23/2008), R. at 370: Ms. Peters reported that her arm had "hurt a lot since [the] rotator cuff tear in 2005" and that she "takes a lot of ibuprofen."

- Dr. Bloink (7/29/2009), R. at 406: The claimant "brought up issues with regard to her right shoulder. . . . She has been told to stay off nonsteroidal anti-inflammatories, so she uses occasional Tylenol."

- Dr. Bloink (11/7/2009), R. at 403: The doctor reported that the claimant returned "for continued pain in the right shoulder. She has rotator cuff syndrome. She uses Flexeril 10 mg h.s. p.r.n."

The claimant argues that, given this evidence, the ALJ's conclusion that the record reveals a low level of treatment and a lack of consistent complaints is not supported by substantial evidence.

Considering first the ALJ's finding of a low level of treatment, the Court is satisfied that this finding is supported by substantial evidence. The medical reports that the claimant herself points to reveal that she did in fact manage her pain primarily with ibuprofen for a significant period of time. *See* R. at 370, 416, 417. *See also Shepherd v. Apfel*, 184 F.3d 1196, 1202 (10th

Cir. 1999) (fact that a claimant takes only aspirin for allegedly disabling pain can undermine claimant's credibility). Additionally, as the ALJ noted, there does not appear to be any evidence that the claimant sought out more aggressive treatment, such as injections, physical therapy, or message therapy, during this period. Although the evidence suggests that the claimant's limited treatment might be related to the side effects she experiences with certain medications, there is not sufficient evidence in the record to overwhelm the ALJ's finding of a low level of treatment. Thus the Court concludes that this finding is supported by substantial evidence and the decision should not be remanded on this basis.

However, turning to the ALJ's finding that the claimant did not consistently complain of shoulder pain from 2007 to 2010, the Court cannot find that this conclusion is supported by substantial evidence. The evidence listed above reveals consistent, ongoing complaints about shoulder pain from at least August 2007 to November 2009.[2] Indeed, the claimant points to ten occasions on which medical professionals noted her complaints of pain during that period. The Court finds that the ALJ's finding of a lack of consistent complaints from 2007 to 2010 is overwhelmed by the evidence summarized above, and thus it is not supported by substantial evidence. *See Bernal*, 851 F.2d at 299 (a decision cannot be based on substantial evidence if it is "overwhelmed by other evidence in the record"). For this reason, the Court must remand the decision on this basis.

### 3. The Claimant's Neck Impairment and Anxiety

Next, the claimant argues that the ALJ failed to consider her neck impairment and

---

[2] The government responds to the claimant's argument on this point by asserting that the ALJ stated only that the claimant had complained about shoulder pain specifically to Dr. Bloink on only a few occasions. ECF No. 16 at 16 (citing R. at 28). While that is true, the ALJ concluded his analysis by finding the claimant's complaints not credible in part because of the "lack of consistent complaints of pain." R. at 29. This more general conclusion is the one that is undermined by the extensive evidence the claimant cites.

anxiety properly in his RFC assessment after finding both to be non-severe at step two. As noted above, an ALJ must consider all of a claimant's medical impairments, including non-severe ones, in making an RFC assessment. *See* 20 C.F.R. § 404.1545(e). *See also Wells v. Colvin*, 727 F.3d 1061, 1068–69 (10th Cir. 2013) (finding that a claimant's impairments are non-severe at step two "does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five."). Indeed, it does not appear that the ALJ discussed Ms. Peters' neck impairment or anxiety in his pre-July 2010 RFC assessment. *See* R. at 27–31. Although these omissions are likely harmless error in light of the ALJ's step-two analysis (in which he found that neither impairment caused the claimant any limitations in her ability to work), the Court remands the decision on other grounds and thus does not undertake a harmless error analysis here. On remand, the ALJ should explicitly consider these alleged impairments in his RFC assessment.

### B. Consideration of Medical Opinions

The claimant argues that the ALJ failed to consider the opinion of physical therapist John McAward and a portion of the opinion of Dr. Primack properly.[3]

### 1. Mr. McAward

Beginning with Mr. McAward's opinion, the Court notes that because Mr. McAward is a physical therapist, his opinion is not considered an "acceptable medical source" opinion, but rather an "other source" opinion. *See* SSR 06-03p at *2. Thus the ALJ was required to determine what weight to afford it under the factors listed in SSR 06-03p: how long the source

---

[3] It is unclear to the Court if the claimant also intends to argue that the ALJ did not properly consider the opinion of Dr. Bagge. To the extent that she does, the Court finds that the few stray references to Dr. Bagge's opinion in the relevant section of the claimant's brief do not provide a sufficient basis for appellate review. *See Murrell v. Shalala*, 43 F .3d 1388, 1389 n.2 (10th Cir.1994) (holding that "a few scattered statements" in plaintiff's argument are merely "perfunctory complaints [that] fail to frame and develop an issue sufficient to invoke appellate review").

has known the individual and how frequently he has seen her, how consistent the opinion is with other evidence, the degree to which the source presents relevant evidence to support the opinion, how well the source explains the opinion, whether the source has an area of expertise related to the individual's impairment, and other factors that tend to support or refute the opinion. SSR 06-03p at *4–5.  Furthermore, "[t]he fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because 'acceptable medical sources' are the most qualified health care professionals." *Id.* at *5.

Here, the ALJ afforded little weight to Mr. McAward's opinion, which found that Ms. Peters should be limited to sedentary work. R. at 30, 255.  He did so because (1) the functional capacity exam (FCE) on which it was based was performed prior to the claimant's alleged onset date, (2) "the evidence demonstrates that the claimant continued to heal from her shoulder surgery, and only occasionally complained of shoulder pain in 2009 and 2010," and (3) FCEs are "highly contingent upon the claimant's effort."  R. at 30.  Furthermore, the ALJ noted that the conclusions of the FCE were not consistent with the objective medical evidence, the exam findings, or the claimant's treatment history until July 6, 2010.  He thus concluded that Mr. McAward's findings were not consistent with the record as a whole and accorded them little weight.  The claimant challenges the second and third reasons listed here.

Beginning with the second reason, the Court finds that the ALJ's conclusion that Ms. Peters continued to heal and only occasionally complained of shoulder pain is not supported by substantial evidence.  The ALJ's opinion does not cite to any evidence showing that the claimant's shoulder continued to heal, but the claimant's brief points to Dr. Bagge's December

11

26, 2006 statement that he would "declare her at MMI [maximum medical improvement]." R. at 478. Mr. McAward examined the claimant about four months later, in April 2007, and thus, based on Dr. Bagge's statement, the claimant was at her MMI at that time. *See* R. at 248. Because the ALJ did not point to any evidence to the contrary,[4] the Court cannot find that his conclusion that the claimant's shoulder was still healing was supported by substantial evidence. Furthermore, as discussed above, the record contains evidence demonstrating that the claimant consistently complained of shoulder pain from at least August 2007 to November 2009. *See* R. at 261, 263–66, 370, 403, 406, 416, 417, 419, 421. For these reasons, the ALJ's second stated reason for affording Mr. McAward's opinion little weight is not supported by substantial evidence, and the decision must be remanded on this basis.

As for the ALJ's third reason for giving the opinion little weight, the Court finds that the fact that a test is highly contingent upon the claimant's effort is an appropriate consideration. *See* SSR 06-03p at *4–5 (ALJ can consider other factors that tend to support or refute the opinion).

### 2. Dr. Primack

The claimant also argues that the ALJ erred in affording great weight to Dr. Primack's finding that Ms. Peters can lift 20–25 pounds occasionally and 5–10 pounds frequently. ECF No. 15 at 28 (citing R. at 30). In his opinion, the ALJ gave Dr. Primack's conclusion great weight because (1) it was rendered by a treating source, (2) it is consistent with the relevant

---

[4] Nor does the government point to any contrary evidence. *See* ECF No. 16 at 13. The government's brief notes that in a September 2007 exam, Dr. Primack found that the claimant's cervical range of motion was "actually quite good" and that she did not seek further treatment for nearly five months following that exam. *Id.* (citing R. at 422, 257). However, neither piece of evidence undermines the conclusion that the claimant's shoulder was not continuing to improve in April 2007. Indeed, Dr. Bagge's April opinion notes that Ms. Peters reported that she had "reached somewhat of a plateau" in physical therapy. R. at 478. Moreover, Dr. Primack's September report notes that the claimant's shoulder was still somewhat impaired at that time. R. at 261.

exam findings, the claimant's treatment history, and the objective medical evidence, and (3) it is "clearly explained and persuasively reasoned." R. at 30.  The claimant takes issue with the first two reasons.

First, the claimant argues that Dr. Primack was not in fact a treating physician because he performed his evaluation of Ms. Peters at the request of a worker's compensation insurance company and "did not prescribe or recommend any treatment." ECF No. 15 at 28–29. The relevant regulations define "treating source" as

> your own physician . . .who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.  Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s).  We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s).  We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability.

20 C.F.R. § 404.1502.  Under this definition, the Court agrees with the claimant that Dr. Primack was not a treating source.  The doctor's report makes clear that Ms. Peters did not have an ongoing treatment relationship with Dr. Primack; indeed, it notes that the claimant "present[ed] for a Comprehensive Consultation/Extensive Medical Record Review." R. at 263.  Ms. Peters saw Dr. Primack on only two occasions, the second of which involved additional tests that the doctor used to supplement his conclusions in his first report.  *See* R. at 257, 266.  For these reasons, the Court finds that the ALJ erred in considering Dr. Primack's opinion as that of a

treating source.[5]  For this reason, the ALJ did not correctly apply the applicable law, and the decision must be remanded for a proper determination of the weight that should be afforded to Dr. Priamck's opinion.

Turning to the claimant's second criticism of the ALJ's analysis, Ms. Peters asserts that Dr. Primack's opinion is not consistent with other evidence in the record.  However, the entirety of the claimant's argument on this point is the single statement that "[the doctor's opinion] is certainly contrary to the opinion of PT McAward, who rendered his opinion after a lengthy evaluation." R. at 29.  This lone assertion does not provide the Court with a sufficient basis to find that Dr. Primack's opinion is not consistent with the record as a whole, and thus the Court will not consider the argument further.  *See Murrell v. Shalala*, 43 F .3d 1388, 1389 n.2 (10th Cir.1994) (holding that "a few scattered statements" in plaintiff's argument are merely "perfunctory complaints [that] fail to frame and develop an issue sufficient to invoke appellate review").

### C. The Claimant's Credibility

Lastly, Ms. Peters argues that the ALJ did not properly assess her credibility.  The ALJ must consider a number of factors in making a determination about a claimant's credibility:

> (1) The individual's daily activities; (2) The location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) Any measures other than

---

[5] The government argues that Dr. Primack would have provided treatment had he found that any was necessary, citing the doctor's statement that "[o]nce we have the results of [the EMG/NCV study and sonogram], further delineation regarding treatment can be made." R. at 257.  It is not clear from this statement alone that he would have been the one to provide treatment, and, in any event, he did not in fact provide any treatment, as the government acknowledges.  The fact that he might have become a treating physician had treatment been necessary does not mean that he was one when he performed a consultative examination.

> treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p (citing 20 C.F.R. § 416.929(c)(3)). In reviewing an ALJ's credibility determination, courts must keep in mind that "[c]redibility determinations are peculiarly the province of the finder of fact, and [a court should] not upset such determinations when supported by substantial evidence." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (internal quotations and citations omitted).

In the present case, the ALJ found that "the claimant's statements concerning the intensity, persistence, and limiting effects of [the alleged] symptoms are not credible prior to July 6, 2010, to the extent they are inconsistent with the above [RFC] assessment." R. at 27. Additionally, he concluded that "[a]s for the claimant's complaints of physical pain and an inability to work, the evidence does not support her allegations." R. at 28. As the claimant acknowledges, the ALJ discussed several reasons that support his credibility determination, many of which involved conflicts with objective medical evidence. *See* R. at 27–31.

The claimant argues that the ALJ erred by picking and choosing among the medical reports and relying only on portions that are favorable to a finding of non-disability. Her brief makes four specific points: (1) the ALJ did not discuss Dr. Primack's finding regarding tightness at the posterior capsule, (2) he did not discuss the findings on the cervical MRI in conjunction with the claimant's alleged hand tingling and numbness, (3) his conclusion that Ms. Peters only occasionally complained of shoulder pain is not supported by substantial evidence, and (4) the ALJ did not properly consider the claimant's daily activities. The Court has already addressed the first and third arguments, disagreeing with the first and agreeing with the third. As for the

second argument, the claimant provides no citation to the record, but the Court assumes that she is referring to the MRI of the Cervical Spine performed by Dr. Bagge on July 5, 2007. R. at 475–76. It is not clear from Dr. Bagge's report that the MRI provides evidence of hand tingling and numbness, and, in any event, the Court is satisfied that the ALJ's conclusion regarding these symptoms is supported by substantial evidence. *See* R. at 30 (discussing EMG/NCS test results). Lastly, having reviewed the ALJ's discussion of the claimant's daily activities, the Court finds no error in the ALJ's analysis. *See* R. at 30. Indeed, the claimant's brief offers no real argument as to why the analysis on this point is flawed. *See* ECF No. 15 at 30.

In sum, the Court is satisfied that the ALJ followed the applicable law in assessing the claimant's credibility. Furthermore, setting aside the conclusion that Ms. Peters only occasionally complained of shoulder pain, the Court sees no basis for finding that the remainder of the ALJ's conclusions regarding Ms. Peters' credibility are not supported by substantial evidence.

## IV. Conclusion

The Court finds that the ALJ's opinion is flawed in its failure to relate the evidence of Ms. Peters' obesity to his conclusions about her RFC, the finding that Ms. Peters had only complained of shoulder pain on a few occasions between 2007 and 2010, the lack of any discussion of the claimant's neck impairment and anxiety in the RFC assessment, the analysis underlying the determination of what weight to afford Mr. McAward's opinion, and the consideration of Dr. Primack's opinion as that of a treating source. However, it is not clear that correction of these errors will necessarily change the ALJ's conclusion that benefits should be denied, and thus the Court declines to award benefits at this time. *See Salazar v. Barnhart*, 468

F.3d 615, 626 (10th Cir. 2006). Therefore, the decision of the Commissioner is REVERSED and REMANDED for further findings.

DATED this 16th day of March, 2015.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge

17